RECEIVED
NOV - 8 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| ERNEST LEWIS | * | CIVIL ACTION NO. 04-1447 |
|---|---|---|
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Ernest Lewis, born August 25, 1955, filed an application for supplemental security income (SSI) on August 1, 2002, alleging disability since November 1, 2000, based on hepatitis C, HIV positive (AIDS), kidney problems, a spinal injury, and headaches.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from University Medical Center ("UMC") dated July 25, 2001 to August 23, 2002.** On June 10, 2002, claimant complained of neck and back pain after being involved in a motor vehicle accident. (Tr. 91, 93). Lumbar spine x-rays were normal. (Tr. 95). Neck x-rays showed minimal osteoarthritis at C5-C6. (Tr. 96).

Claimant was also treated for AIDS and chronic hepatitis C. (Tr. 92, 98, 101, 103). He had one episode of thrombocytopenia and positive CMV serology. (Tr. 104).

**(2) Internal Medicine Consultative Examination by Dr. R. F. Taylor dated September 23, 2002.** Claimant stated that he was HIV positive. (Tr. 106). He had been treated with Viracept, Videx and Zerit for four years. He complained of intermittent blurred vision and fatigue from HIV. He also reported constant neck and back pain following a motor vehicle accident in June, 2002. His medications at that time included Bactrim DS, Viracept, and Zerit.

On examination, claimant was 69 inches tall and weighed 151 pounds. (Tr. 107). His blood pressure was 121/68, and pulse was 55 and regular. His vision was 20/40 in both eyes without corrective lenses. His near vision was 20/30. Peripheral vision was 85 degrees bilaterally.

On musculoskeletal examination, claimant's range of motion of the back and neck were normal. Straight leg raising was negative. There was no muscle spasm or tenderness.

Range of motion of the extremities was normal. Claimant had no loss of muscle strength or atrophy. His grip strength was excellent. Manual dexterity and grasping ability was normal.

Claimant had no swelling, instability, or deformities of the joints. His gait and station was normal. He could walk on his heels and toes without difficulty.

Neurologically, claimant was oriented as to time, place, and person. His cranial nerves and motor and sensory nerve function were normal. Deep tendon reflexes were normal.

Psychologically, claimant was neatly dressed and well groomed. His behavior was appropriate. Thought content, affect, mood, concentrating ability, and memory were normal.

Dr. Taylor's impression was chronic hepatitis C, HIV infection, and mechanical neck pain of unknown etiology. (Tr. 108). He stated that claimant's physical examination was completely normal. He noted that anti-viral treatment for HIV could sometimes produce fatigue, but based on his physical findings, he found no reason to limit claimant's work-related activities.

**(3) Residual Functional Capacity ("RFC") Assessment – Physical dated October 23, 2002.** A. Lee, SSA 2, determined that claimant could lift 50 pounds occasionally and 25 pounds frequently. (Tr. 110). Claimant was found to be able to stand/walk and sit for about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He had no other limitations. (Tr. 111-13).

The examiner determined that claimant's statements were partially credible, and that his limitations were out of proportion with the medical evidence. (Tr. 114).

**(4) Records from UMC dated September 18, 2002 to May 5, 2003.** On September 18, 2002, claimant's AIDS was stable. (Tr. 128). It was noted that he had been non-complaint with followup.

On February 3, 2003, claimant's CD4 had increased from 294 to 470, and his HIV viral load had increased from 440 to 4770. (Tr. 125-26). His last hepatitis C viral load was 2,660,000. (Tr. 130). He continued to complain of headaches since his automobile accident, for which he was taking Advil and Tylenol. (Tr. 124). His AIDS was stable.

On March 24, 2003, claimant complained of low back pain, neck pain, headaches, and shortness of breath. (Tr. 118). The assessment was HIV/AIDS and thrombocytopenia. He was doing well with AIDS.

On May 5, 2003, claimant had no complaints. (Tr. 117). His chronic hepatitis C had failed treatment. Viracept was discontinued due to resistance, and claimant was placed on Sustiva. His thrombocytopenia was stable.

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on October 17, 2003, claimant testified that he had last worked driving a tractor from September to December or January. (Tr. 25). He stated that he did not want to do that any longer because his eyes became blurry. (Tr. 27).

Claimant testified that he was trying to work, but no one would hire him because he was HIV positive. (Tr. 25). He reported that he had contracted HIV from a girlfriend. He said that he had not used narcotics for 10 years, and consumed alcohol "every now and then." (Tr. 25-26).

Claimant reported that he was treated every two months. (Tr. 26). He complained that he had blurred vision. He stated that he had good days and bad days.

Claimant stated that he lived by himself in a house. (Tr. 27). He said that he was "struggling." He testified that during the day, he watched television and slept. He also tended a small garden in his back yard. He occasionally socialized. (Tr. 28-29).

Regarding limitations, claimant testified that he had a bad leg, which limited his ability to stand and walk. (Tr. 27). He stated that he could stand for about half

5

an hour before his leg became hot. (Tr. 28). He reported that he needed to take a three to four hour nap during the day. He said that he had trouble sleeping at night sometimes. (Tr. 29).

**(6) The ALJ's Findings**. Claimant argues that: (1) the ALJ denied claimant due process of law; (2) substantial evidence fails to establish that his past work as a tractor driver constitutes past relevant work, and (3) the ALJ improperly applied the Medical-Vocational Guidelines. Because I find that the ALJ failed to fully and fairly develop the record, I recommend that this case be **REMANDED** for further proceedings.

As to the first argument, claimant asserts that the ALJ denied him due process of law by failing to secure an oral waiver of his right to counsel. (rec. doc. 12, p. 6). It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.*, citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). However, to merit reversal of the ALJ's decision, a claimant who does not validly waive his right to counsel must prove that he was thereby prejudiced. *Id.*; *Gullett v. Chater*, 973 F.Supp. 614, 621

(E.D. Texas 1997).

The record reflects that the ALJ notified claimant of his right to counsel in writing. (Tr. 42-45). However, he did not do so orally at the hearing. In support of claimant's argument that he should have been orally advised of his right to counsel, he cites HALLEX I-2-65-2 (A) (rec. doc. 14, p. 2), which provides as follows:

> The ALJ will open the hearing with a brief statement explaining how the hearing will be conducted, the procedural history of the case, and the issues involved. In supplemental hearings, the ALJ need only identify the case, state the purpose of the supplemental hearing, and describe the issue(s) to be decided.
> Generally, the content and format of the opening statement are within the discretion of the ALJ. However, if the claimant is unrepresented, the ALJ must ensure that the claimant is capable of making an informed choice about representation. For example, the ALJ should ask an unrepresented claimant the following questions on the record:
> 1. Did you receive the hearing acknowledgment letter and its enclosure(s)? (If not, the ALJ will provide the claimant with a copy and the opportunity to read the letter.)
> 2. Do you understand the information contained in that letter concerning representation? (If not, the ALJ will explain the claimant's options regarding representation, as outlined in the acknowledgment letter. Specifically, the ALJ will explain the availability of both free legal services and contingency representation as well as access to organizations that assist individuals in obtaining representation.

***

> Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will secure, on the record, the claimant's decision concerning representation. The ALJ will also enter into the record the acknowledgment letter and enclosure(s) sent to an unrepresented claimant only if the claimant elects to proceed pro se at

the time of the hearing.

While HALLEX does not carry the authority of law, the Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). The record reflects that the ALJ utterly failed to advise claimant of his right to counsel at the hearing. He did not even attempt to comply with the minimal requirements of HALLEX. In fact, the record reflects that the hearing lasted only nine minutes, and that the transcript was a mere seven pages long. (Tr. 24-30). Thus, the undersigned finds that claimant did not validly waive his right to counsel.

The Fifth Circuit requires, however, a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such failure will be permitted to serve as the basis for relief from an ALJ's decision. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton*, 209 F.3d at 458.

In support of his argument that he was prejudiced, claimant asserts that, at the very least, the ALJ should have re-contacted Dr. Taylor and ask that he complete a

residual functional capacity assessment. (rec. doc. 12, pp. 6-7). A review of Dr. Taylor's report shows that he did not complete an RFC assessment. (Tr. 106-08). It appears from his examination that he evaluated only claimant's exertional impairments, but not his non-exertional impairments.

At the hearing, claimant testified that he needed at least a three- to four-hour nap every day. (Tr. 28). While Dr. Taylor acknowledged that HIV treatment can sometimes produce fatigue, it is unclear whether he considered claimant's non-exertional limitations in his evaluation. These non-exertional limitations, if fully considered, might very well have affected the outcome of this case. Thus, I find that claimant has shown prejudice due to the ALJ's failure to fully and fairly develop the record.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to obtain a consultative evaluation of claimant's exertional and non-exertional impairments, particularly a residual functional capacity evaluation. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this **7** day of **November**, 2005 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 11-8-05
BY: gbr
TO: CMH
TLM